## Commonwealth v. Fetzner

*Herbert J. Johnson, Jr.,* District Attorney, for Commonwealth.

*George W. Schroeck* and *A. L. Gambatese,* for defendant.

LAUB, J., May 15, 1957.—Defendant was convicted of operating a motor vehicle while under the influence of intoxicating liquor. He has asked for a new trial, and we are presently considering whether he is entitled to one.

The Commonwealth, at trial, produced two police officers who testified that defendant was arrested about 4:15 in the afternoon and at a time when there was a large amount of traffic on the highway. The police vehicle had pulled abreast and to the left of a car which was waiting for a red traffic light to change. Defendant was immediately behind the other car. When the light changed, defendant crowded between the police car and the car to its right, passed the latter and proceeded down the highway with the officers in pursuit. Defendant was brought to a halt within a short distance. He got out of his car and fell across one of the fenders. He admitted having been drinking, his face was flushed and his eyes glassy. He had difficulty in finding his identification cards, had a strong odor of alcohol on his breath, had a thick tongue and used a large quantity of profane language. Later, when taken to the hospital, he walked over some newly planted hedges and stumbled and fell. Both officers were of opinion that defendant was under the influence of intoxicating liquor. They placed him under arrest at the scene where he was stopped by them and took him to the police station. At the police station defendant demanded that a blood test be given him to determine whether he was under the influence of liquor. The officers obliged by taking him to Hamot Hospital where the test was taken. This was about 45 minutes after the arrest.

At trial the Commonwealth produced the results of the test which showed the presence of 23/100ths of one percent of alcohol in the blood. This was followed by the testimony of an expert who specializes in pathology and internal medicine. He testified that a person with such a quantity of alcohol in his blood stream would be under the influence of alcohol and not safe to drive an automobile. He said that the dividing line between safe alcoholic content and unsafe alcoholic content in the blood was 15/100ths of one percent. It is the admission of the testimony concerning the blood test which gives rise to defendant's contentions that he is now entitled to a new trial.

Upon reading the charge of the trial judge it is at once apparent that the court was familiar with the holding in Commonwealth v. Hartman, 383 Pa. 461. There had been similar testimony concerning the safe percentage of alcohol in the blood stream accompanied by testimony that from one-half hour to an hour and a half is required for the alcohol in one's stomach to find its way completely into the blood stream. No such testimony was introduced in the case at bar. In the Hartman case the trial court was of opinion that since it took so long for the alcohol to get into the blood stream, defendant might not have been under the influence of liquor when arrested although completely intoxicated when the test was given. Therefore, because the jury may have relied upon the evidence of the blood test and found defendant guilty solely or largely from that evidence, the trial court decided that a new trial should be awarded. The Supreme Court held that such action was not an abuse of discretion and, upon that basis alone, dismissed the Commonwealth's appeal, although it indicated that the appeal was improperly taken in the first instance since it involved a mixed question of law and fact. The significance of the Hartman case is that it did

not rule intoximeter. or blood tests to be improper; it ruled only that under the peculiar circumstances of that case there was no abuse of discretion in the trial court.

As noted above, the charge of the trial judge in the instant case indicated complete familiarity with the Hartman case. In charging the jury this was said concerning the blood test evidence:

"Now, Members of the Jury, with respect to this testimony, you cannot and you may not convict this defendant on this testimony alone. The conviction of this defendant must rest upon the testimony of the police officers. That may surprise you. But, in view of the fact that there was no testimony as to how long it would take for this amount of alcohol to get into the defendant's blood stream, I cannot permit you to find this defendant guilty solely upon this testimony. In other words, if a large quantity of alcohol was consumed by this defendant shortly before his arrest, but had not yet found its way into his blood stream at that time, but found its way into his blood stream forty-five minutes later, the test would show the large quantity there, when it might not have been in his blood stream at the time of his arrest. So that under such circumstances, you canot find this defendant guilty solely upon the basis of this scientific evidence which has been introduced here. But that does not mean, Members of the Jury, that you are not to consider that evidence. In arriving at the truth in any case, the jury has the duty of reconciling testimony wherever possible and seeking corroboration. If you believe this expert evidence, if you believe that testimony, and accept it, you may consider it in connection with the testimony of the officers, as to whether or not it corroborates them, and whether or not it corroborates the circumstances of the defendant's having consumed a considerable quantity of alcohol. But that is

the only way in which you are permitted to consider it. But, as I say, you are not supposed to disregard this testimony, but you cannot convict upon it alone."

In the light of this charge it is quite evident that defendant was fully and amply protected. Most certainly, had the proof been that defendant was seen by witnesses 45 minutes after his arrest, not having consumed any alcohol in the interim, the testimony of such witnesses that defendant was drunk would have been admissible as a corroborating circumstance. The mere fact that the witnesses called based their opinion upon scientific rather than visual evidence would not make the evidence any the less admissible. Under the charge in this case it is clear that defendant was convicted upon the testimony of the officers and not upon the blood test. We must assume that the jury followed the judge's instructions: Dauphin D. T. Co., v. Standard Oil Co., 312 Pa. 229, 232.

In any event, the testimony in question was clearly admissible upon another theory. The testimony of the Commonwealth as well as that of defendant was to the effect that defendant importuned the officers to give him the blood test. True, defendant testified that his consent was given after the officers insisted that he take a "balloon" test which he refused to do. He was, therefore, aware of his right to refuse to take any test. In consequence, his agreement to take the blood test was strictly voluntarily made even under his own theory. Under such circumstances, had the Commonwealth not offered the results of the test defendant would have been at liberty to invoke the rule that the failure to produce evidence in the possession of a party whose duty it is to produce it raises the inference that such evidence, if produced, would be unfavorable to said party: Abrams v. Crown, 178 Pa. Superior Ct. 407, 412; Tremaine v. H. K. Mulford Co., 317 Pa. 97, 106-7.

If police officers, in good faith and in order to determine whether their opinion as to intoxication is well founded, have a blood test taken of a defendant after he requests such test, there is no logical foundation for refusing to admit such test. The fact that it may inculpate rather than exonerate defendant would not operate to defeat such admissibility. True, if the test exonerated defendant, the district attorney, in the exercise of that good faith which the law requires of him, should produce such evidence in chief. And, if he does so, no one could complain. The fact that the test did not exonerate defendant should have no bearing upon the admissibility of the test.

We are of opinion that defendant had a fair trial and that the evidence of the officers fully sustained the jury's verdict. The rule granted on the motion for a new trial must, therefore, be discharged.

And now, to wit, May 15, 1957, the rule heretofore granted on defendant's motion for a new trial is discharged, and defendant is directed to appear forthwith for sentence.